Krupp, Peter B., J.
After accepting defendant Ivan Luis Santiago’s plea in this matter, I continued the case to December 7, 2015 for sentencing. I write now to explain my reasons for doing so.
Defendant is charged with aggravated rape of a child, indecent assault and battery on a child under 14, and related charges. Because of the age differential between the defendant and the victim, defendant faces a ten-year minimum mandatory penalty under G.L.c. 265, §23A(b). Without this aggravating factor, I would have discretion to sentence defendant to any sentence between probation and life.
On October 27, 2015, I conducted a lobby conference with the Assistant District Attorney and the defense attorney. See Mass.R.Crim.P. 12(b)(2). The prosecutor indicated that the District Attorney was willing in his discretion, and had agreed, to dismiss the aggravated portion of the rape of a child offense and thereby eliminate defendant’s exposure to the ten-year minimum mandatory penalty, see Mass.R.Crim.P. 12(b)(5)(A) (plea agreement may include charge concessions and reductions), in exchange for defendant’s agreement to a sentence of 3-4 years in state prison,[1] with ten years of probation from and after, and with, among other things, the mandatory probation condition that defendant be on GPS monitoring throughout the term of his probation. This was apparently a sentence approved through established mechanisms in the District Attorney’s office and with input from the victim’s mother. On the joint request of the parties, I indicated that I was likely to abide by their agreement.
In agreeing to abide by the parties’ agreement, I was aware that the bargaining power in this negotiation was remarkably unequal as a result of legislative choices. A conviction after trial requiring at least ten years in prison was virtually assured given defendant’s admissions. Defendant was at the District Attorney’s mercy to set aside the minimum mandatory sentence through charge bargaining, and, in exchange, was virtually required to agree to whatever sentence (or here a sentencing range) the District Attorney selected that was less than ten years. As a result, by virtue of the minimum mandatory penalty, sentencing advocacy by the defense had to be directed to the District Attorney.
Under this arrangement, I, as the sentencing judge, was to be little more than a rubber stamp notwithstanding language to the contrary in Mass.R.Crim.P. 12(d) (eff. May 11, 2015). A judge lacks the power to set aside a minimum mandatory sentence. Absent an obvious abuse of discretion, I told the parties I was *99 unwilling to second-guess their agreement, given the power the statutes give to the District Attorney, but not the court, to do away with the minimum mandatory statutory penalty. And my hands were essentially tied. If defendant entered a plea and I imposed a sentence higher than agreed, the defendant would have an opportunity to withdraw his plea. See Mass.R.Civ.P. 12(d)(4)(B). If I disagreed with the District Attorney’s chosen sentence, I could reject the plea and defendant would then be compelled to face the minimum mandatory sentence, but I could not compel the District Attorney to agree to a lower sentence or to remove the minimum mandatory.
While Rule 12 of the Massachusetts Rules of Criminal Procedure speaks throughout about a sentencing “recommendation” to the judge, in the context of aplea agreement involving a charge concession setting aside a minimum mandatory sentence, the parties’ agreement is a recommendation only insofar as I have two options: either adopt the District Attorney’s sentencing determination, or reject the plea and require defendant to go to trial and receive a minimum mandatory penalty that all of the parties agree is unjust. In essence, I have the ability to reject the deal because it is too lenient (and my suggested higher sentence would likely be agreed to by the defendant if less than the minimum mandatory), but not to compel or impose a lower sentence.
Defendant has admitted to substantial abuse of his wife’s nine-year-old daughter. He deserves to be punished and for society to be assured he never commits any such offense again. Yet, as the District Attorney’s agreement recognizes, defendant is not an unredeemable person. He turned himself in or made himself available to the police in connection with this investigation and admitted to the charged conduct and apparently expressed considerable remorse in multiple interviews with the police. Defendant suffers from severe anxiety and schizoaffective disorder, among other issues. He has been released on bail for most of this year and has successfully pursued treatment. He has submitted various reports detailing considerable progress while on release and commitment to a course of treatment, and a forensic psychological evaluation suggesting he presents a low risk of reoffense and is a good candidate for sex offender treatment.
The most recent evaluation, which was written by the Coordinator of Behavioral Health Services at the Mattapan Community Health Center, was made after treatment sessions with defendant and after the District Attorney’s decision to recommend a low end of three years in state prison. It expresses the strong feeling that the recommended sentence “would be more harmful than helpful” to defendant and the victim, and recommends defendant “be placed on the most restrictive probation/ongoing use of ankle GPS[, i]n addition to mandatory therapy, medication compliance, attendance at self-help meetings and drug screens.”
On November 16, 2015, the parties appeared for a change of plea and sentencing. Per the agreement, the parties recommended the agreed-to 3-4 years in state prison. After taking the plea, as part of the sentencing proceeding, and at the ADA’s request, I then heard some of the most compelling victim impact statements that have come before me: one from the victim’s 14-year-old brother and the other from the victim’s mother (and defendant’s wife). Both urged me to reject the District Attorney’s selected sentence and to sentence defendant to probation based on who defendant is as a person and what his incarceration would do to the victim and her family.[2]
I do not mean to suggest that such impacts do not affect every family when a defendant goes to prison, or that the District Attorney did not weigh these factors when he arrived at the 3-4 year prison sentence. But it is extremely rare that I receive a sentencing agreement with which the victim’s family disagrees so vigorously. And I do have concerns that the victim’s interests, expressed eloquently at sentencing, be thoughtfully heard.
Sentencing is hard, imprecise and often emotional. It involves multiple considerations and balancing often contradictory interests. Punishment and incapacitation may conflict with rehabilitation. Deterring similar conduct by others, which is always a consideration, is difficult to assess with respect to this type of crime. And whatever the balancing, there are always collateral consequences on the defendant, the victim, their family and friends, and society generally.
In recent years, there has been increasing attention to the interests of victims. Through enactment of G.L.c. 258B, the legislature sought ”[t]o provide victims a meaningful role in the criminal justice system” by “afford[ing them]... basic and fundamental rights, to the greatest extent possible and subject to appropriation and to available resources.” G.L.c. 258B, §3. Among victims’ enumerated rights are the rights “to confer with the prosecutor . . . before the submission of the commonwealth’s proposed sentence recommendation to the court,” and “to be heard through an oral and written victim impact statement at sentencing or the disposition of the case against the defendant about the effects of the crime on the victim and as to a recommended sentence.” Id. §§3(g), 3(p) (emphasis added). See also Id. §7.
“Although nothing in G.L.c. 258B . . . alters [the] long-standing jurisprudence that the victim of a crime does not have a judicially cognizable interest in the prosecution of another . . . the statute was intended to change the ‘traditional view’ of victims from virtually silent observers to active participants.” Hagen v. Commonwealth, 437 Mass. 374, 380-81 (2002), citing G.L.c. 258B, §3(p). Justice Greaney’s dissent in Commonwealth v. Woodward, 427 Mass. 659 (1998), rec *100 ognized the weight given to victims’ statements. In Woodward, Justice Greaney questioned the lawfulness of the trial judge’s sentence because the murdered victim’s parents did not have sufficient notice or time to appear before the court and, in lieu of their statements, the trial judge relied upon the parents’ prior testimony. 427 Mass. at 692-93. As Justice Greaney reasoned in Woodward, precluding victims from the opportunity to make a statement regarding sentencing not only deprives victims of their statutory right, but also deprives judges and prosecutors of “the benefit” of the victims’ thoughts in determining a sentence. Id. at 693.
The importance of hearing victim impact statements also echoes through the rules for plea colloquies and sentencing procedures. See Mass.R.Crim.P. 12(c)(3)(C) and 12(d)(3)(C). This case raises the question of how victims should be heard where plea agreements involve charge concessions eliminating a minimum mandatory sentence. The victims that both parties agreed should make a statement in this case were compelling. A sentencing proceeding is not a show with a prearranged script. It involves, among other things, listening to victims, and truly hearing them, at a time when they can influence the decision maker. Given the strictures in place on my discretion when a plea agreement sets aside a mandatoiy minimum, the sentencing decision is effectively made by the District Attorney.[3] But the decision-maker, the District Attorney or a representative from his office duly authorized to listen and then deviate from the pre-determined sentencing recommendation, was not present for the hearing. In short, there was no one in the courtroom to meaningfully hear the victims when they described defendant, his role in the family, their need to move on, and the impact incarcerating defendant would have on them.
For these reasons, I have directed that a recording of the proceeding on November 16, 2015 be provided to the District Attorney; that he review all of the relevant reports, listen to the recording, and certify that he has done so; and that on December 7, 2015 the District Attorney explain to the court, either himself or through his designated representative, whether he continues to insist on a 3-4 year prison sentence over the strongly articulated objection of the victim’s family and defendant’s mental health provider, and if so why; whether he recommends a lesser sentence; or whether he wishes to allow the court to exercise its discretion in sentencing defendant free of the minimum mandatory.

 In cases with similar charges, I have seen defendants receive extremely short sentences (as little as six months in the house of correction! up to more than 15 years.

 The victim’s mother also opened a sealed envelope, containing a letter prepared by the now 11-year-old victim. (The victim’s mother indicated she had not read what her daughter had written before opening the envelope before me.) In the letter, the victim complained that while people listened to her when she reported the abuse at age 9, she felt the authorities were not willing to listen to her at age 11 with regard to the impact on her and her family if defendant were t.o go to prison. Although the victim is young, the letter suggests she is smart and her sentiments heartfelt. In a number of contexts, courts will consider the opinions and testimony of children. See, e.g., Custody of Vaughn, 422 Mass. 590, 600 n.12 (1996) (suggesting interview with boy, age 14, regarding custody where father, the custodial parent, allegedly perpetrated acts of domestic violence against boy’s mother); Commonwealth v. LeFave, 407 Mass. 927, 941-42 (1990) (discussing competency of children to testify).

Having accepted defendant’s plea, I am bound to impose the agreed-to sentence absent agreement of the District Attorney.